United States of America v. Christopher Blair Hernandez. We'll hear from Ms. Davidson. Good morning and may it please the court. Kristen Davidson on behalf of Mr. Hernandez. Mr. Hernandez was convicted of unlawfully possessing a firearm, but he was sentenced as though he had committed attempted first degree murder. Can y'all hear Ms. Davidson where you're sitting? Not really. I didn't think you would be. If you could maybe move the microphone towards you a bit. Check, check. One, two, one, two. Thank you and I'm sorry. Start her time again. I didn't mean, I'm not trying to take your time. Anything for education, your honor. May it please the court. Mr. Hernandez was convicted of unlawfully possessing a firearm, but he was sentenced as though he had committed attempted first degree murder. While I'm happy to entertain any questions the court may have about his second amendment challenges to his conviction, I plan to focus most of my argument on the implausibility of the district court's finding that Mr. Hernandez committed attempted first degree murder. Just real quickly, do you concede that 922 G1 is off the table, the challenge given the current case law in our circuit, and you would have to go en banc to change that? I think plainness, whether or not 922 G1 applies to these specific predicates has not been affirmatively decided by a court yet, but there's much that has been decided that is plain at this point. Between Bruin, Rahimi, and Diaz, as well as some of the other cases, it's plain that 922 G1 is presumptively unconstitutional and the burden shifts to the government to find historical tradition. The predicates involved in Mr. Hernandez's case were tampering with evidence and possession of cocaine. The government offers no historical evidence relating to tampering and very little regarding possession of cocaine. Again, the court hasn't yet decided those specific predicates, but there is at least Conley and the cases that follow from there that do examine the lack of historical tradition relating to dispossessing someone of a firearm because they possessed an intoxicating substance. Plainness is also established on direct that could be decided and make his as-applied challenge fully plain. Yes, I can see that the facial challenge is foreclosed at this point. But right now you don't have a case that would establish the prong to? Is that right? There's no case that affirmatively establishes yes, but plainness could be made clear while this case is pending on appeal. I understand. So that is why I'd like to move on to the sentencing unless there are more Second Amendment questions. The district court's finding, which is essentially an overruling of an objection and a finding that Mr. Hernandez committed attempted first degree murder, is implausible. What the defendant was able to establish, not only through the facts adopted by the court in the PSR, but also the additional police reports that were offered and admitted at sentencing, is that a man in a white car comes to Mr. Hernandez's home in the middle of the day. He's wearing a mask. He's in possession of his own gun and shots are fired. Multiple witnesses call 911 and dispatch reports to the officers that a car is shooting at a residence. When one of those witnesses is interviewed, she says she watches a white car pull up to Mr. Hernandez's home. Mr. Hernandez walks out. The person in the vehicle opens fire, at which point Mr. Hernandez returns fire. That easily meets the four prongs of self-defense because there was an immediate imminent threat of death or bodily injury. Mr. Hernandez was at his home going outside to see who this masked man was. He did not provoke it. There's no evidence of provocation. He had no opportunity to remove himself from the situation. Everyone reports it's a bit of a contemporaneous event. Certainly, there's a causal relationship between the shots fired from the car and the returning fire. He easily meets the four prongs of the self-defense standard, which shifted the burden to the government to offer proof to negate that. And all that the government points to are photographs of the white car. That just establishes that the man... Yes, sir? My question is whether or not the district court could plausibly found that he fired the first shot. I missed the last part of your question. I'm sorry. Could the district court have plausibly found that he fired the first shot? That Hernandez fired the first shot? Yeah. No, not based on this evidence because there are multiple witnesses, independent of anyone in the home, that report that the person in the white car fired first. And so, you know, if there's an inference to be made, it still has to be tied with logic to the evidence. And it's that the person in the white car fired first comes from a self-serving... Sorry, that Mr. Hernandez fired first comes only from a self-serving statement of the man in the white car, but the physical evidence doesn't report that, doesn't support that, and neither does the witness statement. So would we send this back if you were to prevail on not foreshadowing and the district court could make a determination of whether the self-defense argument works or not? Or would that be the proper position? I think when there is a well-preserved objection and then an opportunity to present evidence at sentencing, the government does not get a second bite at the apple. In our case law, though, we have a number of examples where we've... They can go into it. I believe a lot of those examples are from plein air or where there's been no... Or even if preserved, there's been no further evidence presented at sentencing. Off the top of my head, I am not aware of a case where the objection is preserved so heavily litigated at sentencing and then the government gets another bite at the apple. What do you do with the white case? I know it's unpublished, but it says that as long as he's holding the gun, that's enough. White is distinguishable because you have video evidence of not only Mr. White provoking the bar fight, which would eliminate the second part of self-defense, but he actually puts... There's a much more direct relationship. He points the gun at another person's head and pulls the trigger, but the gun malfunctions. You've got a much greater relationship between the specific intent necessary to meet attempted first-degree murder, and you've got evidence that allows for that intent. A .40 caliber pistol, have you ever seen a .40 caliber pistol? Yes, sir. It's a formidable weapon, to say the least. It's not a casual weapon. It's not a .38. It's not a .40. The very possession of that really bespeaks someone who is in the business of, like the illegal business itself. Here you have shell casings found, multiple firearms found from that weapon. That, to me, is background shadows for the district court to look at. But in the real world... My understanding is a .40 caliber handgun is also commonly possessed, but it was not possessed by my client, Mr. Hernandez. Mr. Hernandez had a 9mm. There was a 9mm possessed by the man in the car, and there was the .40 caliber handgun, which was possessed by Mr. Brito. And they found two shots fired, two .40 caliber casings, that's consistent with Mr. Brito's possession of the .40 caliber handgun. But that's not my client. My client admitted to discharging his 9mm. He said it misfired when they found the 9mm. There was not a round chambered, which is consistent. It was in the house, wasn't it? They found it in the house. Well, they found the gun in the house. They found additional ammunition in the house. But when they found Mr. Hernandez's 9mm, there were bullets in the magazine, but no bullet was chambered in the gun, which would be consistent with the gun failing to reload. The witness who watched the shooting happen also told the police she watched Mr. Hernandez pick up additional shell casings. The police reports and the information. You say that he fired his weapon, but you're saying only the shell casings. My client. Yes. Correct.  That is a matter of timing. It is a matter of timing. But whatever inferences are drawn from the facts we have, they have to be tied with logic to those facts. They can't be speculation. They can't be guessing. They can't be judicial idiosyncrasy. And when we look at what facts were adopted by the court in the PSR and the additional proof provided in the police reports, it presents a timeline of a masked man coming to someone's home and a witness seeing that masked man fire first. Those are the facts we have. There was no greater investigation. There was no evidence that this was a murder investigation. Murder charges were never brought. There's no evidence. In fact, an officer testified at arraignment. There was no evidence that my client shot the man in the white car. There's no forensics. What about the fact that your client deleted the video footage? Yes. My client was unlawfully possessing a gun, so he knew he wasn't supposed to have guns. I think at a minimum, I mean, if you infer any sort of guilty knowledge, that can be fair, but it doesn't speak to of what guilt he might have been feeling, especially when he knew he wasn't supposed to be in possession of a firearm. He admits to discharging the weapon. We know there's a shooting. That's not in dispute, but I think when you remove any self-interest comment, you come back to the people who weren't intimately connected. You have witnesses who called 911 saying dispatch reports that the car is shooting at the residence. You have a witness interviewed who gives the chronology of watching the white car fire first. You also have, and this is in, I believe it's one of the defense exhibits, a woman named Cheyenne who's on a first date and doesn't know anybody, and she's in the Jeep, which is parked in the driveway in between this happening. I don't think it's a fair reference that she saw what happened, but she clearly heard what happened, and the statement that's written in the police report is that the white car fired and Hernandez fired back. That implies a type of chronology, and it's reasonable that she heard those respective shots. So I think that when the evidence is looked at, you've got the person in the white car who goes with confrontation in his mind to someone's house. He's in the possession of a 9mm gun. It's confirmed in the police report that he was wearing a mask. You've got this masked man showing up in the middle of the day with a gun, and you have witness testimony reflecting the person in the car shot first. The burden shifts to the government to negate that proof of self-defense, and the government failed to negate it. Two quick questions about the shell casings. It seems odd that he would pick up the other person's shell casings, and then also about the harmless error argument. Can you address both of those, please? Yes. As to the shell casings, again, it was the government's burden to undermine the witness statement of what she saw, which was Mr. Hernandez picking up the casings. They found the 1mm and the .240 caliber casings where Hernandez and Brito were standing, but they also found additional casings in the Jeep, and we don't know from this investigation what those were. As to the harmless error, the government provides no response in their response brief to harmlessness, and I don't think they can bear that burden, and that is because the court kind of made a general rubber stamp type of comment about any harm, but it's steeped in the assumption of the finding that the court made, which was that he committed attempted first-degree murder, and that is implausible based on the evidence of this record. There's no indication in the record that he would have given the same sentence if he varied up at all from what Mr. Hernandez's guidelines should have been. We just don't know where that would land. Thank you. We've saved time for rebuttal. Next, we'll hear from Ms. Bradley. May it please the Court, Lauren Tanner Bradley for the United States. First, this Court should affirm Mr. Hernandez's conviction because he cannot show plain error. As this Court mentioned, it recently rejected a very similar plain error challenge in Cisneros where the defendant had predicate drug felony convictions, and Cisneros forecloses Mr. Hernandez's Second Amendment challenge on appeal. Second, this Court should affirm Mr. Hernandez's sentence, and that's because he cannot show clear error. At best, Hernandez is presenting a competing view of the evidence. Under this Court's clear error standard, where there are two permissible views of the evidence, there cannot be clear error. Are there two permissible views of this evidence, though? Yes. Because all the force perhaps seems to be on one side. And I disagree, Your Honor. So when you look at the evidence here, the District Court credited the victim's account. That credibility determination is entitled to deference. The victim said that he went to Mr. Hernandez's house because he was owed money, that it became clear in that conversation that Mr. Hernandez was not going to pay, that the victim then returned to his car, and that's when the people in the house started shooting. Hernandez says that he and Brito both fired their firearms, and under these circumstances, the District Court credited that victim's account. The physical evidence also corroborates that account. The injuries in this case, the victim suffered injuries to his left back shoulder, he suffered injuries to his left hip, and that actually was exit wounds through his groin. That is consistent with the physical damage to the car, which was shot in the driver's side door right about where someone would be sitting in their car. And then the driver's side window was also shattered, indicating that he was shot through the window. There is also no physical evidence to corroborate the other witness account. That witness account, we don't have any information about the vantage point of that witness. I believe that in the reply brief, Hernandez says that this individual lives 335 feet away. That's the distance of a football field. And it's hard to imagine, and the District Court would have taken these facts into account, that an individual who comes upon a house, a Jeep, a truck, and begins firing at four people outside, that somehow that individual does not hit anyone or anything, and there are no shell casings to support the idea that he fired at all. So that physical evidence in this situation supports the District Court's finding. We also have evidence that Hernandez destroyed evidence in this case. So Hernandez is saying that he acted in self-defense, and he's the only person who destroyed evidence capable of corroborating that account. He also repeatedly lied to officers. It took him quite a while to get to the point that he had actually fired shots in this case. He initially says, I didn't know him. And then he says, well, I did know him, but he fired shots. I took cover. I'm surprised that you found a firearm in my house. How did that get there? So we really have a lot of reason to discredit these accounts. And under this Court's clear error standard, those credibility determinations are all entitled to deference. Are you relying on harmless error? No, we are not relying on harmless error here. The District Court did indicate that it would have sentenced him above the guidelines range, with or without the objection. But I don't think on clear error that Hernandez has met his burden here. I think the evidence strongly supports the District Court's finding that it's a plausible finding on this record, and that even if this Court would have weighed the evidence differently, that here, where there are two permissible views of that evidence, there cannot be clear error. Is it your position, the government's position on the 922G, that here it's just not plain error? Or is it your position that it would be constitutional to bar someone who's previously possessed a controlled substance from having a weapon? The government believes that that's a constitutional application of 922G1 under any standard of review. But certainly on plain error standard of review, it's Hernandez's obligation under this Court's standard of review to show that that error is clear. But we have not yet in this circuit articulated a view on that, the actual constitutionality on that situation, where it's not based upon a parole or supervised release or any of that sort of thing, right? That is true. This Court has actually not invalidated 922G1's application to any defendant. No, but I mean it hasn't said that that would be enough, that it would be constitutional to. I'm asking the opposite question. Not have we ever invalidated 922G1, but have we ever said that merely possessing a controlled substance would be a reason to have your right to a firearm forever kept from you? Well, post Bruin, I don't believe this Court has ruled on that issue, but it has in the plain error context. Only in the plain error context. Right. And that's the Wilson case, which was cited in our 28-J briefing. I did want to just point out also that it doesn't act. Should we opine? I'm sorry? Should we opine? Sometimes whenever something is a repeated thing that keeps coming up on plain error, we say we address prong one, and we don't just go to prong two. Should we address prong one to provide guidance in this circuit? And if so, how would we address prong one? I don't think it would be appropriate to opine on that under plain error review because it is Hernandez's burden to show that it is clear and obvious. But just like with qualified immunity, sometimes where we address the prong one, you can decide on either one, but the Court has also said you can clarify and let people know what the law is. We have done that in plain error cases, too, to say this is the law, but it doesn't satisfy clear error, or this is the law, and it also doesn't. It could be consistent one and two, or it could be divergent, and the government could still win, but it would provide guidance. So what would the guidance be if we were to opine on prong one? What is the right answer? Well, the right answer is that it would be a constitutional application of 922G1 under this Court's precedent in Diaz and also generally under the framework that's been created in Bruin. But again, I don't think that this Court can actually get there because of Cisneros, that Cisneros forecloses that holding here. I'm sorry. There's nothing that forecloses our ability to opine on prong one here. I understand you're saying you win anyway. That's okay to say that. But I'm asking what is the proper analysis of prong one, not whether you win or lose ultimately. I'm asking how do you analyze this important constitutional question. You could say I don't think the Court should do that because you shouldn't analyze a constitutional question when you don't have to, Your Honor. That would be a perfectly fine response. But what is the constitutional response here? Well, I suppose that I don't think it would be appropriate to opine on a constitutional question that you don't have to. And, you know, I just think that it's not appropriate under this case and on this standard. But can you engage with the constitutional question to bar someone from ever possessing a firearm for mere possession in the past? Yes. It's not an addiction. It's not a status. It's not any of the things that might be ongoing. The record doesn't have any of that. It's not a loaded question. I'm sorry? I'm not asking you a loaded question. Well, I suppose that I want to be careful in terms of how the briefing is done in this case. We brief this as a plain error case, and that is the position of the briefing. But essentially, Diaz refused to opine as to any other predicate conviction that Diaz talks about how we have two aspects of a historical tradition and that those aspects taken together, that this country has a history and tradition of serious and permanent punishment for certain crimes and also of disarmament as a permanent punishment. And at least in this case, this individual's predicate convictions of possession of cocaine and tampering with evidence are as serious as theft. And also that it's consistent with receipt, possession, and trafficking of illicit contraband and that this is all consistent with our historical tradition. Again, I don't think that the court can or should go there, but that is the government's position on that point. Based on this clear error standard of review, I don't think that Mr. Hernandez has met his burden here. The district court's finding is plausible on this record because of the victim's account and all of the corroborating physical evidence to support that account, and this court should affirm. Thank you. We have your argument. Unequivocally, yes, the court can opine on whether there is a constitutional error on the first step of plain error review. Each prong is a separate analysis, and this court can definitely— I think that there is a lot about the Second Amendment analysis that is clearly established at this point, whether it's directly applied to a particular circumstance, that is an open question, but in terms of how to apply the Second Amendment analysis and what type of historical evidence the government has the burden of producing, yes, in fact, I think there's plenty of clarity so far from the Supreme Court in this court's decision so far. As I mentioned, there is no dispute at this point, based on Diaz, or at least it's plainly established that 922G1 is presumptively unconstitutional, shifts the burden to the government. There have been drug cases. I mean, I don't anticipate that historical traditions are going to be changing their application to a particular contemporaneous and modern-day crime, might have a different analytical relationship, but the historical evidence is likely to be unchanging, and so we have had a number of cases so far where this court has surveyed the founding-era relationship with intoxicating substances and has found there's been no historical tradition tied to dispossessing someone. Do you want to take the rest of your time and talk about the busted window and all of that? Yes. That the car's window was rolled all the way up is speculation. It does not have to be fully closed in order for the window to have shattered when it was hit by a bullet. There's no dispute, I don't think, that the man in the white car was in the car. That is consistent with the evidence of the car panel and his wounds, but only his statement is the one that he was out of the car. No witness saw him out of the car, and we have to remember he was entirely compromised and uncooperative every time officers tried to talk to him. He was uncooperative with the cops. He lied about his name. He denied that he possessed the gun. He was uncooperative with the nurses. I think it's a reasonable inference that if he needed surgery, they administered some sort of pain medication, so it's unclear if he was impaired in any sort of way. And he said, the man with facial hair shot me. Mr. Hernandez does not and did not have facial hair. So we've got a lot of, it's not the court can take credibility in whatever way it wants to. It still has to be logically tied to the evidence before the court, and the evidence before the court makes the man in the car statement implausible. What we have are numerous witness statements that are consistent that the car pulled up, he came with confrontation on his mind, he's wearing a mask, he has a gun, and there are all of the reports that at least the police officers are functioning off of is that the man in the car shot first. That's a classic self-defense. So if there was evidence to undermine the credibility of the witness, it was the government's burden to produce that in order to negate self-defense, and they did not. The respective addresses are in the police report. The police officers obviously could have asked those questions but didn't feel the need to report them. We can't guess beyond what is there unless there's a logical tie to the evidence, and there was not. So why couldn't a district court say, I don't care about all the reports and investigations and witnesses. We have the one witness who says, the one person who says, I didn't shoot first. Why can't the court say that's what I believe, and how can we second-guess that? Because the evidence, because it would be implausible that the government met its preponderance of evidence standard. If the facts don't show that, we're looking at inference. The inference has to be reasonable, which is a logical tie to the actual facts. It's not based on speculation or judicial idiosyncrasy. Thank you. Thank you. We have your argument. We appreciate the arguments in this case.